May it please the court, counsel. I'm Larry Gent from Bozeman, Montana, and I represent, as appellate counsel, Mr. Webster. I did not try this case and was appointed for the appeal, and I'd like to begin with addressing the Rule 28J letter filed by both parties concerning the recent decision some days ago of United States v. Moreland. Moreland held in plain English that under the money laundering statute in this circuit, proceeds as used in the statute equals profits. The district court's instructions are contained in the supplemental excerpt of record which you received from the government, and those instructions do not define proceeds as profits. Because of that error, found to be plain in Moreland, the court should reverse the decisions on money laundering and the money laundering conspiracy. The next thing I'd like to address in this case is to give you just a few second overview of the case. This is a case involving a series of alleged dope deals occurring in California where Mr. Webster is accused of being the source of supply for a Billings conspiracy. Significantly, Mr. Webster was not charged with conspiracy to distribute methamphetamine. He's charged in count one with conspiracy to possess methamphetamine in the district of Montana with the intent to sell it, a count of possession on a specific date, money laundering conspiracy, and the $300 wire that's the subject of much of the briefing. There's no evidence that Mr. Webster ever possessed. There's no real contention that Mr. Webster on count two ever possessed, physically possessed, that is exerted control over the methamphetamine in count two. In fact, there was a question from the jury about what dates that was unanswered by the judge. He just referred everybody to the instruction. On count one, Mr. Webster's main defense is simply this. Even if you believe the government witnesses which he disputes, all you have is a situation of a buyer and a seller relationship. And that relationship is not sufficient under this court's decision in United States v. Linnick, which adopted the Lechuga decision out of the Seventh Circuit. There's no agreement in this record between Lamar Webster and anybody in Billings to set up stash houses. Casey Daly is the witness you see in your excerpt that testified to how the stash houses ran. In fact, Mr. Daly says under oath, he's a government witness, that I never saw Lamar Webster with any drugs. He never brought any drugs to me. The wire, I'd like to move to the wire if I could, Your Honor. The wire in this case is a $300 Western Union wire, and we asserted in our opening brief that the wire should not have been admitted. Now, there's a procedural wrangle about whether the objection was adequate or not. The trial counsel says, well, Your Honor, there's no proof that Mr. Webster is the recipient of the wire, and we assert that's enough. But whether it is or not, under the plain error standard announced by this court in Cruz, which says basically that defendants have such a tough job of arguing sufficiency of evidence anyhow, that it really doesn't make much difference. Whether it's plain error or whether it's abuse of discretion standard, that was preserved. And what happens here is that at trial, there's no one that testifies that Mr. Webster picked up the wire. In fact, an interesting twist is two different people testified they sent it, Kelly Mays and the principal co-conspirator, Mr. Todd. Well, they had the driver's license signature of Webster, and they said it looks like the signature of whoever picked up that $300 at the Western Union office. Didn't they have that? Okay, on that argument, Your Honor, the government basically concedes our first argument, and they said, well, the court could have let that exhibit in under a different theory, the admission of a party opponent. The only trouble is, Your Honor, no witness testified to the similarity between the signatures. I don't think you need to have that. Isn't that something the jury can look at and read and make its own decision on? Your Honor, a lay person can testify, certainly. Anybody can testify that they know what a signature looks like, but that person has to have certain guarantees of how the signature was made, guarantees of trustworthiness, which we've discussed in the case law from the circuit in my brief. And what you have there is simply someone from the driver's license bureau comes there and said, actually, I think the agent got it, the DEA agent got it. She puts in the driver's license and says, we got this from the driver's license. It's an official record. That's all. We don't have any witness making any sort of comparison at all. You're turning the jury into the witness. And furthermore, to have the foundation for that signature, you have to have a witness to make a foundation in a trial. You can't just put in a document and say, okay, here's the document. Mr. Gent, the thing that bothers me about this case is even assuming that the testimony about the $300 receipt and all of that was properly received into evidence, where is the proof of money laundering? And it seems to me that someone sent this $300 to Webster, and I think the jury could conclude that Webster signed for it and got it. So Webster gets $300 through a Western Union money transfer. Where is the money laundering in that? That's what I'm having difficulty finding. Your Honor, in realizing, of course, that there has to be testimony of profits, there's nothing in the record where there's proof that first you have to show profits and second there's a knowledge element. You have to show that there's some way that Lamar Webster knows that this particular $300 is the profit of some sort of illegal enterprise, and there's nothing in the record. And we raised in our first brief, Mr. Webster did, the absence of the elements of money laundering, and that has not been answered. And it's critical to this case because the prosecution argues that he's part of a money laundering conspiracy in the closing argument, those excerpts are in my first brief, and therefore says since he's part of a money laundering conspiracy, you can find him guilty of the substantive offense of possessing drugs on the 22nd of December of... and I'll read you that excerpt from my brief. I don't want to read it to you, but the point is that all this is critical. If there's no elements of a substantive offense to commit a conspiracy, you not only have to have an agreement, but you have to have the intent to commit the underlying offense. And so not only is there an absence of money laundering, there's a trickle-down effect from that lack of the offense to the entire case and the way the government sought to prove it. And that's why however you rule on the admissibility of the wire, it affects all four counts. The government argues that they corroborated, although no corroboration is necessary in federal court, they corroborated count one by quote, the wires, and the only wire that mentions Mr. Webster, of course, is the $300 wire. But going back to count one, in count one, in closing argument, the government argues, quote, the essence is a criminal partnership, and what did you hear, ladies and gentlemen, of a criminal partnership? Richard Todd got together with L, that's Mr. Webster's nickname, and found out he could get him some methamphetamine to sell, and the prosecution says there's an agreement under this particular instruction, that's all you have to find. And that's wrong. You have to find an agreement not just to buy and sell, but an agreement to enter into the criminal partnership. And the criminal partnership in this case, that the government chose to charge in front of the grand jury, was an agreement to possess methamphetamine with the intent to sell it in Billings, Montana during a requisite period. And there's no evidence that Mr. Webster was part of that agreement at all. He took one road trip, and that's it. That's the only testimony we have, I believe, of him even being in Billings, Montana. And remember that the government, if it could have chosen to prosecute Mr. Webster in the District of California for sale, sale is not a continuing offense. It happened and it's done. And that's what, if you believe the government's case on the narcotics counts, that's what this case shows. It's not a criminal partnership to be involved in the Casey Daily stash houses in Billings. And in spite of our challenge to the government, there's nothing that shows that Mr. Webster participated in that particular agreement. Your Honor, I would like to reserve the balance of my time for rebuttal. I do that. Good morning, Your Honors, and may it please the Court. My name is Leif Johnson for the United States. And like Mr. Gent, I was not trial counsel below. I want to just address quickly or substantively this whole issue of what do we have left with the money laundering after the Moreland case. Obviously, it was brought to my attention when this decision came out that, in viewing the transcript, that we have a lot of transactions here which are clearly not profits of the drug transaction scheme. They're actually expenses. And those include a number of the payments to Roger Todd, who was the father who was driving the drugs to Montana. They paid his gas and so forth. A lot of those transactions are included in the indictment as substantive money launders. So obviously those under Moreland are gone. And so what I endeavored to do, reading through the transcript prior to this, was to sort of see, well, what do we have left here? I think there is a basis in Congress that could affirm, but obviously it's not what it was. The Court of having trouble hearing counsel. Go ahead. Counsel, I'm having trouble hearing counsel. I'm sorry, Your Honor. I'll speak more loudly. My question is whether the government's considered, in light of Moreland, which, of course, it didn't have advance notice of and the case was tried on a different theory, whether the government has considered that it might be a better part of discretion to concede some of those claims, some of those charges. Your Honor, counts two and three are obviously in play here. And let me just give you what I came up with looking through the transcript, just so you know and we all know what's left. There is some testimony in the record from Richard Todd that some of these transactions were colorably promotion transactions with profits. And page 420 of the record, he mentions a couple of them. One of them is a $2,600 wire to Shawna Todd to help her with rent after she broke up with her boyfriend. Her boyfriend happened to be a friend of Mr. Webster. I think colorably the government could argue there that that is a promotion in the sense that it promoted harmony with the drug supplier, in this case it was Mr. Webster. There was another transaction that's listed on page 420 of the trial transcript, Your Honor, which is a $1,300 money laundering, money or a transaction, a Western Union, that Mr. Todd described as he didn't know what it was exactly for, but he said it was for the continuing purpose of the drug business. So there's a couple of them there that are listed in the indictment that you could colorably say are promotions. And in addition to that, Your Honor, and I think most of what's left, is in Kelly May's testimony at page 616 of the transcript where she says, you know, I received eight or ten of these wire transfers from Richard Todd. And that was money that I was to use, you know, for various bills, but also to stash at the house. And they stashed a lot of cash at the house, up to $100,000, which Mr. Todd testified was used by him to buy other drugs or to pay lawyers if they needed them. That was his safety fund. And so in that sense, Kelly Mays did testify about receiving Western Unions for money that could be put in that stash. And I think that stash in itself is the most important aspect of promotion with profits that we could find left from the record after we remove all of these expenses. Now, that would give us the sort of larger money laundering conspiracy, which with what's left isn't that significant, but I think there's enough there. I think you could say there's enough there to say these parties agreed that we would send money by Western Union and that it would be available once it got to California to help promote the scheme because it protected us. And so from there, then we need to ask, OK, did Mr. Webster join that conspiracy? And I think that was your question. What about this three hundred dollar transaction? Because that is the only launder transaction with regard to Mr. Webster. And the government's theory at trial was that, you know, this isn't a very big transfer and it's fairly slight. But the law allows that as long as he agrees to accept the wire. And the testimony of Mr. Todd on that issue was that Webster told Todd they talked every day about the drug business. And at some point, his girlfriend threw him out of the house. He needed three hundred bucks. And Richard Todd said, OK, I'll Western Union. I'll send you three hundred bucks. And he testified, I didn't want to send it by Western Union. He doesn't explain why, but then he explains that Mr. Webster told him, well, don't worry about it. It's only three hundred bucks. So they clearly talked about whether or not he should receive a wire from Richard Todd. And I think it indicates at least an inference can be drawn that it indicates caution in dealing with these types of transfers, because these guys were in the drug business and they really knew what was going on. Our theory on that three hundred bucks, as small as it is, is that Richard Todd said that obviously it was profits of the scheme. It wasn't an expense of the scheme. It was simply a payment to Webster. And to make it was obviously profits. Well, I'm not saying it's obviously profits. I'm saying it's it's not prohibited by the Moreland analysis. And the reason I say that is because it wasn't a central it wasn't a central transaction to the scheme. And if you look at Moreland, Moreland says, look, and they call back to the Van Alstyne case. And in that decision, the court said, you know, if a transaction isn't central to the scheme, then we don't then it can be a separate launder. And that's what we have here. And that's what happened in Van Alstyne. This is this is not a payment of an expense in the drug transaction, like paying for Roger Todd's gas. This is simply an expense made to keep Lamar Webster happy. And it wasn't to buy drugs or anything else. And so that's our theory as to why it was a promotion of the scheme. And obviously that's what we have. Suppose we were to conclude that the evidence concerning the three hundred dollar transfer is not sufficient to support the money laundering conviction. Yes. Does the money laundering conviction go out? Is that the end of it? That three hundred dollars. Yes. That's the only transaction. Yes. You're you're absolutely right. Then what are you left with? The other drug counts. Yeah, we have counts one and two. And contrary to what Mr. Gent has argued, they're totally unaffected by this transaction. I briefed it in, you know, and I can run through some of the evidence of the conspiracy. But there was very clear evidence of a conspiratorial agreement. I mean, we're dealing with pounds and pounds of methamphetamine that was traveling to Billings. And Mr. Webster even went with the drugs on one occasion and he had his own drugs in on the deals. I mean, he was invested in the scheme. So if we remove that three hundred dollar transaction, that does not affect counts one and two. Now, the government did argue that that three hundred dollar transaction is is relevant or is is material evidence in the case in counts one and two. But it's by no means determinative. And Mr. Gent was discussing count two very briefly. And I just want to clarify what that is. I mean, the government obviously picked a date for count two. And that was the date of this wire. That was the date that Richard Todd sent the 300 bucks. Why is that significant? Well, it's significant because if you look at the transcript, Richard Todd had just received a pound of methamphetamine from Mr. Webster just prior to that. And just after that, he received two pounds. So they were in this massive sale conspiracy. It was going full bore at that point. And that wire was a date that was on or about the time when they were trafficking in well more than 500 grams. And so while the wire is relevant because it sort of sets that date and it establishes a connection, it is by no means determinative or does it harm the government's case if that's not considered a wander? And I hope that's clear because I would like to explain more if the court has any questions. And I guess I would finish by saying this buyer seller issue. Obviously, it wasn't raised to the court for for any instruction. The court didn't give one. I'm not aware of a case that requires that. And clearly, this wasn't a buyer seller relationship issue. This is a full blown conspiracy. And I think the record amply supports that. The court has no further questions. Your Honor, I note that counsel for the government used the term, quote, a massive sale conspiracy, end quote. And that's not what my client is charged with. He's charged with a conspiracy to possess methamphetamine with the intent to sell it in billings. And there still hasn't been any answer from the government of how Mr. Webster made an agreement with someone to possess methamphetamine in billings on either count one or count two. Now, you can prove possession. As you know, there's three ways. You can prove it co-conspirator. You can prove it by aid and abetting or actual physical control. And at trial, there's no proof of actual physical control. They argue on appeal and aiding and abetting theory. And the conspiracy theory argued at trial was based on the money laundering. Now, the aiding and abetting, you have to have a specific intent. There's a four-part test that you know from the brief. There's a specific intent to commit, to facilitate crime. You have to have the requisite intent to commit the underlying offense, which is possession of intent to sell. You have to assist and participate. And then the underlying offense has to be committed by someone. Now, those are the four things you have to do. And we still haven't heard why Mr. Webster or if Mr. Webster had the specific intent to facilitate that. Because, you know, these transactions were complete in California. And, you know, it doesn't make any sense to try to relate the $300 wire to that. There's testimony all over the record to several places about at one time the Billings drug conspiracy, the Todd family conspiracy, had $100,000 in cash. A $300 wire sent to someone, it's de minimis. There's not even a scintilla of evidence that that $300 wire went for a specific transaction. And under the statute he's charged with, of course, he's charged with a promotion statute and a promotion conspiracy. Under that prong, there's nothing to connect it. There's a knowledge. I want to briefly address what counsel said about the three things on the transcript. There's no evidence in that transcript that satisfies the knowledge prong of money laundering. That is, you have to know it was profits after more, not just proceeds. You have to know that you're getting the profits. Nothing there. There's a case called Tran. It's a recent case of the circuits discussed in my brief. Although it is true that the connection to a conspiracy has to be slight, Tran specifically notes that the obligation of the government to meet its burden of proof that someone is connected to a conspiracy is certainly not slight. And if you read carefully the transcript references about what Mr. Webster did in Billings, the fellow who's testifying there, he says, It's in response to the prosecutor's repeated questions he's drawing up. It doesn't say anything about him doing anything to put those drugs in the stash house. And if you look at the similarity with Tran, Mr. Tran was there when they were doing things. Webster was kind of in a chase car. He was going up to Billings with his buddy. Tran was actually there, and the circuit says, And if you look at that record and the testimony of Casey Daly, you're not going to find one single thing that shows that Lamar Webster knowingly participated in hiding this dope for the Todd crime family in Billings. And that's why the evidence of conspiracy as a matter of law is insufficient, and the court should rule on that basis. My time is up. Do you have any questions for me? No, I don't. I want to thank you both, counsel, for your argument. Thank you, Mr. Gent, for bringing Moreland to our attention and also for your efforts, Mr. Johnson. You haven't had that much time business days-wise with travel and all to consider it, so I'll tell you what I suggest is that I'm going to give the parties until next close of business next Wednesday, which will be the 16th. We won't issue any decisions before then, and if the circumstances should change, and I'm not suggesting that they have to because I don't know how the panel might rule, but should the circumstances change on counts three and four, please advise us by close of business next Wednesday. Otherwise, we'll proceed in our normal course. Thank you. The case just argued, United States v. Webster, is submitted. And we'll go to our last case on the calendar, United States v. Laverdure.
judges: Hall, Thompson, McKeown